# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 98-149-02-CR-W-FJG |
| | ) | 00-395-04-CR-W-FJG |
| XAVIER LIGHTFOOT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Currently pending before the Court are the parties' Motions in Limine. The Court hereby rules as follows:

**1. Government's Notice of Intention to Rely Upon Other Acts of a Similar Nature - (Doc. # 595).**

The Government intends to offer evidence of ongoing, 1997-1998 armed robbery crimes, committed by Lightfoot, Peoples and others. The Government argues that this evidence of the robberies provides the factual setting for the conspiracy and the motive to eliminate an adverse witness. The Government states that this evidence is inextricably intertwined and necessary to explain the circumstances of the murder charge.

The defendant states that there is no theory of admissibility which would warrant the admission of evidence of robberies or other crimes committed by Haskell, Barfield and Hunter, whom he had not met before his arrest. Additionally, with regard to the robberies allegedly committed by Lightfoot, Peoples and others prior to Lightfoot's arrest in December 1997, he states that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.

The Court finds that evidence of the robberies is relevant, not unduly prejudicial and is necessary to provide a factual background to explain the events which occurred. Therefore, the Court hereby **GRANTS** the Government's request to introduce this evidence at trial.

**2. Government's Second Notice of Intention to Rely Upon Other Acts of a Similar Nature - (Doc. # 599)**

The Government intends to offer evidence of Lightfoot's threats toward and plans to harm cooperating witness Anthony Hunter. A government witness, Nathaniel Kenney allegedly said that Lightfoot wanted to get a job as a janitor at CCA where Hunter was confined and that once that happened he intended to push something sharp into Hunter's heart. The Government states that this information is corroborated by the recovery of a filed, pointed metal rod or shank which was recovered in common D-pod housing area. The weapon was recovered on January 16, 2002. The Government argues that the testimony of Kenney demonstrates Lightfoot's consciousness of guilt in relation to the victim, Jovan Ross and adverse witness Hunter. The Government also argues that Lightfoot's efforts to either intimidate or kill Hunter is intertwined with the factual context of the current charges and is also demonstrative of bad acts evidence similar to the same instant crime.

The defendant did not specifically respond to this motion. The Court finds that this evidence is not relevant to the current charges and would instead be unduly prejudicial. Therefore, the Court hereby **DENIES** the Government's request to introduce evidence relating to Lightfoot's threats toward, or plans to harm, cooperating witness, Anthony Hunter.

**3. Government's Notice of Intent to Rely Upon Prior Convictions (Doc. # 597)**

The Government states that the defendant has numerous prior felony and misdemeanor convictions which may be utilized pursuant to F.R.E. 609(a) and (b) for impeachment purposes. The defendant states that the Government has failed to offer any specifics of which convictions they intend to use as impeachment evidence and also fail to offer any rationale for the admission of such evidence. The Court agrees and hereby **PROVISIONALLY DENIES** the Government's blanket request to rely on prior convictions. The Government may raise this issue with the Court at a later time, after providing to the Court and to the defendant a detailed list of the prior convictions which they intend to rely upon for impeachment.

**4. Government's Motion in Limine (Doc. # 672, 878)**

The Government requests that the following items be excluded from evidence: 1) any evidence pertaining to prior solicitation or prostitution arrests or convictions of Jovan Ross; 2) any evidence pertaining to the general health or specific HIV/AIDS status of Jovan Ross or Lightfoot or any medical records relating thereto; 3) any evidence pertaining to suspected or uncharged criminal conduct by any Government witness not in conformity with F.R.E. 401 to 405; 4) Any evidence contrary to F.R.E. 609(a), (b) or (d) prohibiting for impeachment purposes convictions more than ten years old and or juvenile adjudications. The Government states that this request applies to all government witnesses including Cornelius Peoples, Larry Platt and Anthony Hunter; 5) Any evidence pertaining to uncharged, open homicide cases in Kansas City, Kansas or elsewhere including the Wyandotte County investigation pertaining to the shooting deaths of Reginald Thompson and Brandon Bryant on June 20, 1997; 6) any evidence pertaining to a 2001 Kansas City, Kansas jury trial homicide acquittal involving

3

anticipated government witness Quinten Jones.

1) Defendant states that he does not intend to introduce any evidence of arrests or convictions of Jovan Ross for prostitution. 2) As to the medical condition of Ross and Lightfoot, defendant argues that this is relevant to explain the relationship between Ross and Lightfoot, Lightfoot's motives, Ross's motives for falsification of information given to authorities and the extent of the betrayal by Ross felt by Lightfoot. 3) As to criminal conduct of the Government's witnesses, defendant states that he intends to cross-examine these witnesses to the full extent permitted under the Federal Rules of Evidence and intends to explore any implications of any cooperation agreements reached by the witness and the Government and any crimes or behaviors for which the witness may expect not to be prosecuted. 4) With regard to prior convictions of Government witnesses, Lightfoot states that F.R.E. 609(b) allows impeachment by convictions where the witness was released from incarceration in connection with the conviction within 10 years. Additionally, Lightfoot states that he was ready to go to trial in this case in July 2003, but the Government wanted to try his case and Peoples' case together. He states that it would be unjust to prevent him from impeaching witnesses with convictions which would have been admissible had his motion for a speedy trial been sustained. 5) As to the unsolved murders or Reginald Thompson and Brandon Bryant, Lightfoot states that he is entitled to show that Peoples and Anthony Hunter are avoiding prosecution for these double murders based on their cooperation with the Government. 6) As to the acquittal of Quinten Jones, Lightfoot states that he does not intend to question Mr. Jones about this except as it may pertain to his expectations when he first began to cooperate with the Government.

In their Reply Suggestions, the Government states: 1) Medical Condition of Ross

and Lightfoot - the medical conditions have no relevance and are more prejudicial than probative; 2) Prior Convictions of Government Witnesses - Cross examination should conform to the Federal Rules of Evidence and the Government states that this appears to generally exclude the use of uncharged or suspected crimes for cross-examination purposes. The Government also states that inquiry into the factual underpinnings of a specific conviction is also prohibited; 3) Unsolved Murders - the Government states that if questioned, Peoples will admit that he helped move bodies and throw away a gun, but did so out of a fear of also being killed by Hunter. The Government states that neither plea agreement entered into by either Peoples or Hunter contains any implied or express provision regarding non-prosecution for the conduct relating to the homicides and neither witness is receiving immunity from potential prosecution in Wyandotte County. The Government states that Lightfoot must show that the other "uncharged" crimes information represents relevant, admissible evidence and why it does not present an overriding danger of jury confusion and prejudice.

     **1) Arrests/Convictions of Jovan Ross** - As the defendant states that he does not intend to introduce any such evidence, the Court therefore **GRANTS** this Motion in Limine.

     **2) Medical Condition of Ross/Lightfoot** - The Court finds that this information is not relevant to the crime which is at issue.  Additionally, the Court finds that such evidence is more prejudicial than probative and therefore, **GRANTS** the Government's Motion to Exclude Such Evidence.  If the defendant wishes to introduce evidence of his medical condition during the penalty phase, if such phase is reached, he may raise this issue with the Court at that time.

**3) Uncharged Criminal Conduct of and Prior Convictions by Government Witnesses** - The Defendant may cross-examine the Government's witnesses, but is cautioned that such cross-examination shall be in conformity with the Federal Rules of Evidence. If there are convictions which the defendant wishes to use as impeachment which are more than ten years old, the defendant shall provide the Court with advance notice of its desire to introduce such evidence and shall provide to the Court and to the Government a list of all such convictions. Therefore, the Court hereby **PROVISIONALLY GRANTS** the Government's Motion in Limine on this issue.

**4) Unsolved Murders of Reginald Thompson and Brandon Bryant**

After reviewing the parties' briefing on this issue, the Court finds that the admission of this evidence would be unduly prejudicial and potentially confusing to the jury. Also, as noted by the Government, F.R.E. 609 permits impeachment by evidence of past convictions and does not apply to crimes or incidents for which there has been no conviction. Therefore, the Court hereby **GRANTS** the Government's Motion in Limine on this issue.

**5) Acquittal of Quinten Jones**

Defendant states that he does not intend to cross examine Mr. Jones about this except as it may pertain to his expectations when he first began to cooperate with the Government. Therefore, the Court hereby **GRANTS** the Government's Motion in Limine on this issue.

5. **Defendant's Motion in Limine to Assert and Protect His Constitutional Right to Confront the Witnesses Against Him (Docs. # 688, 863)**.

Defendant moves to preclude any out of court statements made by any individual whom Mr. Lightfoot cannot confront and examine about those statements. Lightfoot

6
Case 4:00-cr-00395-FJG   Document 735   Filed 07/19/05   Page 6 of 17

states that he anticipates that the Government will attempt to introduce statements attributed to Jovan Ross, including a videotaped recording of Ross' statements to law enforcement officials. Lightfoot states that this would be improper under either the "forfeiture by wrongdoing" theory or the co-conspirator exception to F.R.E. 801(d)(2)(E).

The Government states that Lightfoot relinquished both Confrontation Clause protections and hearsay objections given his alleged conduct which resulted in the unavailability of Jovan Ross. This exception is set out in F.R.E. 804(b)(6). In the Eighth Circuit case, United States v. Emery, 186 F.3d 921 (8th Cir. 1999), cert. denied, 528 U.S. 1130 (2000), the Government states that the Court observed that a defendant may not benefit from his or her wrongful prevention of future testimony from a witness or potential witness. Additionally, the Government notes that the Supreme Court's ruling in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply to co-conspirator statements because such statements are non-testimonial co-conspirator statements which fall within a hearsay exception.

In his reply defendant states that it is not clear whether the "forfeiture by misconduct rule" survives the Supreme Court's decision in Crawford.

In United States v. Cromer, 389 F.3d 662 (6th Cir. 2004), the Court addressed this issue. The Court noted that in Crawford, the Supreme Court held that:

> testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant.

Id. at 671, citing Crawford, at 1369, 1374. In considering whether the defendant's right to confront the witnesses against him was violated, the Court observed:

> we agree with Professor Friedman, who has postulated that a defendant only forfeits his confrontation right if his own wrongful conduct is

7

Case 4:00-cr-00395-FJG   Document 735   Filed 07/19/05   Page 7 of 17

> responsible for his inability to confront the witness. . . . If, for example, the
> witness is only unavailable to testify because the defendant has killed or
> intimidated her, then the defendant has forfeited his right to confront that
> witness.

Id. at 679. In the instant case, the defendant is charged with murdering the individual who was scheduled to testify against him. Therefore, the Court finds that the "forfeiture by misconduct" exception survives Crawford. Accordingly, even though Ross is unavailable as a witness, the Court finds that statements attributed to Ross or videotaped recordings of Ross shall be allowed. Defendant's Motion in Limine on this point is hereby **DENIED**.

**6. Motion to Declare the Death Penalty Act Unconstitutional (Doc. # 693, 874)**

Defendant moves to declare the Federal Death Penalty Act of 1994 ("FDPA") unconstitutional in light of Ring v. Arizona, 536 U.S. 584 (2002). Lightfoot was charged by a superceding indictment which includes aggravating factors alleged by the Government. Lightfoot argues that because the FDPA does not contemplate such an indictment, it is unconstitutional.

The Government states that the Supreme Court in Ring, Apprendi and Jones was addressing only the required procedures for finding facts. These cases concern criminal procedure and not the definition of conduct that is criminal. The Government states that simply because the FDPA does not specifically state that the aggravating factors are elements of the offense to be charged by the Grand Jury does not mean that they are unconstitutional. The Government argues that Ring does not require that the FDPA be rewritten, it simply requires that the grand jury perform its function concerning facts that are now deemed to be elements or the functional equivalent of elements of offenses for which Congress has decided the Death Penalty may be imposed.

In his reply, defendant acknowledges the Eighth Circuit's recent decision in <u>United States v. Allen</u>, 406 F.3d 940 (8th Cir. 2005), which rejected his argument, but still maintains that a "practice" of the Department of Justice cannot preserve the constitutionality of the FDPA.

In <u>United States v. Allen</u>, the Eighth Circuit stated:

> [Defendant] argues that the Act is unconstitutional after <u>Ring</u> because it directs the government to charge aggravating factors and the requisite mental state in a notice of intent to seek the death penalty rather than in an indictment. We disagree. While it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment. This is the practice that the Department of Justice has adopted after <u>Ring</u>, and it preserves the constitutionality of FDPA prosecutions.

<u>Id</u>. at 949 <u>citing</u> <u>United States v. Barnette</u>, 390 F.3d 775, 788-90 (4th Cir. 2004); <u>United States v. Robinson</u>, 367 F.3d 278, 290 (5th Cir.), <u>cert. denied</u>, 125 S.Ct. 623 (2004).

Thus, despite defendant's arguments to the contrary, the Eighth Circuit had squarely rejected his argument and this Court is bound to follow the dictates of the Eighth Circuit. Accordingly, defendant's Motion to Declare the Death Penalty Unconstitutional is hereby **DENIED**.

**7. Defendant's Motion for Production of Evidence Under Brady and Giglio Pertaining to Guilt/Innocence or Penalty Phases (Doc. # 865)**

Lightfoot states that the Court has previously required the Government to produce all required <u>Brady</u> and <u>Giglio</u> evidence, but states that in order to make a clear record he is requesting eleven specific items. Additionally, because Peoples is the primary witness against Lightfoot, he is specifically requesting that the government produce all evidence of any agreement Peoples has made with the Government in any pending case, including any agreement to testify or provide information against Demetrius

9

Hargrove, who is a defendant in a pending capital case. Lightfoot is also requesting all evidence in the government's actual or constructive possession concerning the law enforcement investigation of the homicides of Reginald Thompson and Brandon Bryant, which occurred on June 20, 1997 in Kansas City, Kansas.

The Government states that it is maintaining its position that guilt phase inquiry into the Wyandotte County, Kansas law enforcement investigation of the 1997 homicide case is impermissible as prejudicial, collateral impeachment and is prohibited by the Federal Rules of Evidence. The Government states that in anticipation of trial and the court's ruling concerning relevancy, the government will verify its receipt of all available reports from the Kansas City, Kansas police department concerning its 1997 homicide investigation and will also verify all statements Peoples may have provided to the FBI concerning a District of Kansas case involving Demetrius Hargrove. If any undisclosed reports are found, the government states they will be produced without delay.

Defendant states in reply that he is not contending that the Government is failing to abide by its obligations, but that in light of the capital nature of this case and the voluminous amount of discovery, he wishes to make a clear record as to his requests under <u>Brady</u> and <u>Giglio</u>. The Court is certain that the Government will diligently comply with its duties under <u>Brady</u> and <u>Giglio</u> and if any additional evidence is located which was not previously produced they will promptly produce it. Accordingly, defendant's Motion in Limine on this issue is hereby **GRANTED**.

8. **Motion to Bar Evidence and Argument Reflecting Inconsistent or Contradictory Theories of Prosecution, in Violation of Due Process and the Doctrine of <u>Smith v. Groose</u> (Doc. # 869)**

Lightfoot states that he has recently learned that the Government has abandoned its previous theories that Peoples initially considered murdering Ross himself, that he broke into Ross' home on May 16, 1998 for the purpose of murdering Ross, but left before Ross returned and that he robbed a jewelry store in St. Joseph for the specific purpose of raising money for the contract to kill Ross. Lightfoot states that the Government theories now are completely contradictory to the theories that they presented at the first trial and the due process clause prohibits the government from presenting two inconsistent or contradictory theories in two different cases.

The Government states that in the first trial, they did not have the benefit of cooperating co-conspirators and in fact did not even know the identity of all the co-conspirators. The Government states that their theory of prosecution has always emphasized that the plan was to kill a federal witness and that they have never specifically alleged that either Lightfoot or Peoples was the actual shooter. Instead, their theory is that both defendants engaged in conduct designed to advance and realize a plot to murder a federal witness. The Government states that Lightfoot is requesting that the prosecution maintain arguments it now knows may not be accurate, despite the reversal of the defendant's convictions and the additional information provided by People's cooperation with the Government. The Government states that unlike the Smith case, they are not deliberately repositioning evidence that the government previously possessed to constitute a new theory of prosecution that is different from that presented in the first trial.

In reply, Lightfoot argues that in the first trial, co-defendant, Peoples was presented as playing an integral role in the murder and that the Government suggested that Peoples even entered Ross' home with the intention of murdering Ross himself.

Now however, Lightfoot argues that the Government's theory is to point the finger only at him and to diminish or downplay Peoples role in the murder. Lightfoot argues that the Government's new theory of prosecution violates the doctrine of <u>Smith v. Groose</u>, 205 F.3d 1045 (8th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 985 (2000) and should not be allowed.

The Court does not find the Government's theories to be inconsistent. As the Government noted in its response, at the first trial in 1999, they did not have the benefit of cooperating co-conspirators and in fact did not even know the identity of all the co-conspirators. The Government states that they have always emphasized that the plan was to kill a federal witness and that they have never specifically alleged that either Lightfoot or Peoples was the actual shooter. In <u>United States v. Paul</u>, 217 F.3d 989 (8th Cir. 2000), <u>cert.</u> <u>denied</u>, 534 U.S. 829 (2001), the Court addressed a similar issue. In that case, the defendant argued that the Government argued at each of the defendant's separate trials that the defendant on trial was the person who pulled the trigger. The defendant argued that the Government cannot take such inconsistent positions. The Court in that case found that the theory that either defendant or both defendants shot the victim was not factually irreconcilable and was supported by the evidence. The Court in the instant case finds that the Government is not proffering inconsistent theories of prosecution and therefore **DENIES** defendant's Motion in Limine on this issue.

**9.    Defendant's Motion to Dismiss or in the Alternative to Preclude the Death Penalty for Violation of His Right to a Speedy Trial (Doc. # 871)**

In May 2001, the Eighth Circuit reversed defendant's conviction. The Eighth Circuit issued its mandate on June 13, 2001. Lightfoot was arraigned on October 2001. On February 25, 2002, he filed a Motion to Dismiss or in the Alternative to Preclude the Death Penalty for Violation of the Speedy Trial Act. On that same day, the Government

filed its second Notice of Intent to Seek the Death Penalty against Lightfoot. On March 18, 2002, the Supreme Court granted certiorari in Commonwealth v. Sattazahn, 563 Pa. 533, 763 A.2d 359 (2001). The parties agreed that the Supreme Court's decision in Sattazahn could be dispositive of Lightfoot's motion to dismiss based on double jeopardy grounds. The District Court denied Lightfoot's motion on December 4, 2002. Lightfoot filed a Notice of Interlocutory Appeal to the Eighth Circuit on December 13, 2002. The Supreme Court issued its opinion on January 14, 2003. On February 3, 2003, Lightfoot filed a motion to dismiss his interlocutory appeal, which was granted on February 5, 2003. On February 27, 2003, the mandate was issued. On April 3, 2003, Lightfoot filed a Motion for a Scheduling Order seeking to set his case for trial in July 2003. He also filed a motion to sever his trial from that of Peoples, who was still litigating a separate issue in the Eighth Circuit. Lightfoot states that the Speedy Trial Act time began to run on June 13, 2001, the date that the Eighth Circuit issued its mandate and expired on August 22, 2001. Lightfoot states that he has been prejudiced because several of his mitigation witnesses have either died or their health has declined.

The Government states that the Speedy Trial Act requires that a defendant be retried following a successful appeal within seventy days from the date that the appeal became final. However, periods of delay listed in Section 3161(h) are excluded in computing the time limitations. The Government states that one of the reasons for which the time limitations may be tolled is if the case is unusual or complex such that it would make adequate preparation unreasonable within the time limitations. The Government states that this case has previously been found to be complex and additionally notes that the defendant agreed from the time of his arraignment following the appeal that this matter should only be set for trial after a final determination had been made regarding

the death penalty.  Thus, the Government notes that Lightfoot initiated several lower and appellate court pleadings regarding the death penalty. The Government notes that the Court has orally noted on several occasions that the nature of the case coupled with the death penalty has made scheduling a firm trial date impractical. The Government states that this therefore excludes all the time since the arraignment.  All delays attributable to Lightfoot's co-defendant are also attributable to Lightfoot.  Thus, the Government states there has been no Speedy Trial Act violation.

In reply defendant notes however that no continuance was sought or granted until after the expiration of the seventy day period following the issuance of the mandate. Defendant states that the Court of Appeals issued its mandate on June 13, 2001, and the seventieth day would have been August 12, 2001.  Defendant states that there were no continuances requested or granted as to either defendant within the seventy day period.

While it is true that no continuances were requested or granted as to either defendant Lightfoot or Peoples within the seventy day time period, a Superseding Indictment was filed on August 9, 2001, naming two additional defendants, Carl Haskell and Curtis Barfield.  In United States v. Pendleton, No. 3:00CR00063, 2000 WL 1771115 (W.D.Va. Nov. 22, 2000), the Court stated:

> Section 3161(h)(7) provides that "a reasonable period of delay" may be excluded in computing the time within which trial must commence for a given defendant when "the defendant is joined for trial with a codefendant as to whom the time for trial has not run." This provision applies to codefendants who were indicted with or after the defendant. See S.Rep. No. 93-1021, 93d Cong., p. 38 (1974). As explained in United States v. Piteo, the joinder of additional defendants in the superseding indictment effectively starts a "single controlling clock" that measures the speedy trial time of all codefendants by the clock of the most recently-added defendant:
> > [I]n cases involving multiple defendants only one speedy trial clock, beginning on the date of the commencement of the speedy trial

> clock of the most recently added defendant, need be calculated under 18 U.S.C. § 3161(h)(7). In this computation, a delay attributable to any one defendant is chargeable only to the single controlling clock. So long as the defendants in question are brought to trial within the seventy speedy trial days that began with the clock of the most recently added defendant and so long as any delay is "reasonable," the Speedy Trial Act is not violated.
>
> Piteo, 726 F.2d 50, 52 (2d Cir. 1983) [cert. denied, 466 U.S. 905 (1984)] (citations omitted); see also Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended (Dec. 1979), rev., with amendments through Oct. 1984, 106 F.R.D. 271, 298 (1984)("In effect, the latest deadline for any joined defendants becomes the deadline for all.").

Id. at *3.  Thus, the Court finds that there has been no violation of the Speedy Trial Act because the addition of defendants Haskell and Barfield started a new Speedy Trial clock running.  Additionally, the Court notes that at various times, defendant Lightfoot and his counsel have sought numerous motions for continuances due to counsel's involvement in other capital cases and also due to the substitution of new counsel. Accordingly, the Court hereby **DENIES** Lightfoot's Motion to Dismiss or to Preclude the Death Penalty for Violation of the Speedy Trial Act.

**10. Defendant's Motion to Bar Consideration of Future Dangerousness as an Aggravating Factor (Doc. # 872)**

During the first trial, the Government proceeded to the penalty phase with regard to defendant Lightfoot.  The Government presented evidence and argument pertaining to various statutory and non-statutory factors, including future dangerousness. On the special verdict form, the jury was asked if it unanimously found that the Government had established the future dangerousness of the defendant beyond a reasonable doubt.  The foreperson checked "no."  Thus, Lightfoot argues that he was acquitted of this factor at the first trial and to retry him on this factor would violate the Fifth Amendment's

prohibition on double jeopardy. Lightfoot argues that while the Supreme Court's ruling in Sattazahn permits the Government to seek the death penalty a second time, it may not seek to retry him on the aggravating factor of future dangerousness, as the jury acquitted him of this factor during the first trial.

The Government states that Lightfoot is essentially requesting a parceled ruling from the Court in contravention of the Supreme Court's ruling in Sattazahn. In the Sattazahn case, the Government notes that the Court found that a death penalty "hung jury" was a non-result, and not an acquittal barring retrial. During Lightfoot's first trial, the Government notes that the jury deliberated in the penalty phase without reaching a decision on life or death, and without making an conclusive, unanimous finding regarding the weight of aggravating or mitigating circumstances. After Lightfoot appealed and reversed his conviction, the Government states there was no double jeopardy to retrying him as a death penalty eligible defendant and thus the Government can argue his future dangerousness as an aggravating factor.

In reply, Lightfoot argues that during the first trial, the jury was able to agree as to what mental state they found, what aggravating factors they found and did not find and what mitigating factors some or all of them found and which ones none of them found. It was only the end result on which they were unable to agree upon. Lightfoot argues that it is only this final determination which Sattazahn holds to not be an acquittal and that there were "verdicts" on the other issues submitted. Lightfoot notes that these "convictions" were set aside by the Eighth Circuit, but argues that the Double Jeopardy Clause prohibits a retrial after an appeal of an offense of which one has been acquitted.

The Court disagrees. In United States v. Peoples, 360 F.3d 892 (8th Cir. 2004), cert. dismissed, 125 S.Ct. 1239 (2005), the Eighth Circuit in discussing Lightfoot's co-

defendant, stated as follows:

> if there has been no acquittal by judge or jury, the defendant may again be subject to the penalty of death. . . . If the jury deliberates but fails to reach a conclusion, it has neither acquitted the defendant of death nor found that he is legally entitled to a life sentence. . . . A non-capital case with a hung jury usually results in an automatic retrial based on "manifest necessity." . . . Jeopardy continues, establishing a "slate wiped clean" for the jury in the second trial. . . . A hung jury in the penalty phase of a capital trial results in a default sentence instead, but the principle is the same: if the conviction is reversed, the prosecution may again seek the death penalty, subject to no jeopardy limitations at either the guilty or penalty phases of the trial.

Id. at 895 (internal citations omitted). Contrary to defendant's assertions, even though the jury made findings regarding various aggravating factors, they were unable to reach a decision as to the ultimate sentence. Thus, Lightfoot was not acquitted of anything and the Government is not subject to any limitations with regard to the aggravating factors which they may seek to prove. Accordingly, defendant's Motion to Bar Consideration of Future Dangerousness as an Aggravating Factor is hereby **DENIED**.


Date: July 19, 2005       **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri       Fernando J. Gaitan, Jr.
     United States District Judge